UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

Z.J.F., a minor, by DEBRA M. CONKLING,

                          Plaintiff,              6:16-CV-1397
                                                   (WBC)
v.

COMMISSIONER OF SOCIAL SECURITY

                          Defendant.
_____

APPEARANCES:                                OF COUNSEL:

OLINSKY LAW GROUP                           HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                 VERNON NORWOOD, ESQ.
OFFICE OF REG'L GEN. COUNSEL-REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

### MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment,

pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in

accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local

Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 14.).

Currently before the Court, in this Social Security action filed by Debra M.

Conkling ("Plaintiff") on behalf of a minor, Z.J.F. ("Claimant") against the Commissioner

of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g),

are the parties' cross-motions for judgment on the pleadings.  (Dkt. Nos. 11, 12.)  For

the reasons set forth below, it is ordered that Plaintiff's motion be denied and

Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Claimant was born in 2003, at the time of filing Claimant was a school-age child

and at the time of the hearing he was an adolescent.  20 C.F.R. § 416.926a(g)(2).

Claimant's alleged disability consists of attention deficit hyperactivity disorder ("ADHD")

and bi-polar disorder.  (T. 239.)

### B.    Procedural History

On May 21, 2013, Plaintiff applied for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act on Claimant's behalf.  (T. 206.)  Plaintiff's

application was initially denied, after which she timely requested a hearing before an

Administrative Law Judge ("the ALJ").  On January 16, 2014, and again on March 26,

2015, Plaintiff and Claimant appeared before the ALJ, John P. Ramos.  (T. 47-52, 53-

73.)  On June 1, 2015, ALJ Ramos issued a written decision finding Claimant not

disabled under the Social Security Act.  (T. 37-58.)  On September 26, 2016, the

Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's

decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely

sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and

conclusions of law.  First, the ALJ found that Claimant was a "school-age child" at the

time of filing and an "adolescent" at the time of the hearing pursuant to 20 C.F.R. § 416.926a(g)(2). (T. 23.) Second, the ALJ found that Claimant had not engaged in substantial gainful activity since the application date. (*Id.*) Third, the ALJ found that Claimant suffered from the severe impairments of ADHD, fine motor coordination deficits, disruptive behavior disorder, and bipolar disorder. (*Id.*) Fourth, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I ("the Listings"). (*Id.*) Fifth, the ALJ found that Claimant did not have an impairment or combination of impairments that functionally equaled an impairment set forth in the Listings. (T. 23-34.) Sixth, and finally, the ALJ concluded Claimant had not been disabled, as defined by the Social Security Act, since May 21, 2013, the date his application was filed. (T. 34.)

## II.    THE PARTIES' BRIEFINGS

### A.    Plaintiff's Arguments

Generally, in support of her motion for judgment on the pleadings, Plaintiff makes three arguments. First, Plaintiff argues the ALJ erred by failing to follow the treating physician rule. (Dkt. No. 11 at 16-18 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ erred by ignoring evidence that Claimant still had symptoms despite his medication and portraying the failure to complete homework as a choice in order to find less than marked limitation in attending and completing tasks. (*Id.* at 19-22.) Third, and lastly, Plaintiff argues the ALJ erred by ignoring evidence of Claimant's behavioral problems and claiming he will continue  to improve on mediation to find that he had less than marked limitations in interacting and relating with others. (*Id.* at 22-24.)

### B.    Defendant's Argument

Generally, in support of her cross-motion for judgment on the pleadings, Defendant makes two arguments.  Defendant argues the ALJ properly evaluated the opinion of Claimant's treating source, Surendra Johri, M.D.  (Dkt. No. 12 at 14-16 [Def.'s Mem. of Law].)  Second, and lastly, Defendant argues the ALJ reasonably concluded that Claimant's impairments did not functionally equal a listed impairment.  (*Id.* at 16-19.)

## III.    RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one

rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability.

*See* 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, No. 02-CV-3127, 2003 WL 21032012, at \*7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. *See* 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. *See* 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at \*7. In essence, "a child is [disabled under the Social Security Act] if his impairment is as severe as one that would prevent an adult from working." *Zebley v. Sullivan*, 493 U.S. 521, 529, 110 S. Ct. 885, 890 (1990).

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). *Id.* Equivalence to a listing can be either medical or functional. *See* 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at \*7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement

is satisfied, the child will be deemed disabled.  *See* 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a child functions in six main areas referred to as "domains."  20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8.  The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do."  20 C.F.R. § 416.926a(b)(1).  Those domains include: (i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for [oneself]; and (vi) [h]ealth and physical well-being.  *See id.*

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  An "extreme limitation" is an impairment which "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(I).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  A "marked limitation" exists when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

IV.    ANALYSIS

A. Treating Source, Dr. Johri

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 416.927(c).  " '[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.' " *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

There are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.' " *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation."  *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), *report and recommendation adopted* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013)).  After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' " *Greek*, 802 F.3d at 375 (quoting Burgess, 537 F.3d at 129).  "The failure to provide 'good reasons for not crediting the opinion of a claimant's

treating physician is a ground for remand.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

On October 6, 2014, Dr. Johri completed a medical source statement. (T. 403-406.) He indicated that he treated Claimant monthly. (T. 403.) Dr. Johri checked the boxes indicating that Claimant had no significant loss in his ability to acquire and use information and in his ability to move about and manipulate objects. (T. 403-404.)[1] He checked the boxes indicating Claimant had "marked loss" in his ability to attend and complete tasks. (T. 404.) He checked the boxes indicating Claimant had "extreme loss" or "moderate loss" in the various subcategories of the domain "ability to interact and relate with others." (*Id.*) Dr. Johri indicated that in the area of "caring for self" Claimant had "marked loss" in developing and understanding what was right and wrong, and demonstrating consistent control over behavior. (T. 405.) He indicated in Claimant had "moderate loss" in recognizing circumstances that lead to feeling good and bad about himself, and "performing most daily activities independently but may need to be reminded." (*Id.*) Dr. Johri did not complete the section of the statement requesting an explanation of his assessment. (T. 406.)

In assessing the medical opinion evidence in the record, the ALJ afforded Dr. Johri's statement "little weight." (T. 26.) The ALJ reasoned that the statement was inconsistent with Dr. Johri's treatment notes, other evidence in the record, and because he did not provide an explanation of limitations assigned. (T. 27.) The ALJ further

---

[1]     The form contained the following definitions. "No/mild loss" is no significant loss of ability in the named activity; "moderate loss" is a functional limitation that causes some loss of ability to initiate, sustain, or complete activities; "marked loss" is a functional limitation that interferes seriously with the child's ability to initiate, sustain, or complete activities; and "extreme loss" is a functional limitation that interferes very seriously with a child's ability to independently initiate, sustain, or complete named activity. (T. 403.)

reasoned that Dr. Johri's limitations were inconsistent with the doctor's findings that Claimant responded to his medication. (*Id.*)  The ALJ specifically noted that although the doctor altered Claimant's medications, overall Dr. Johri's treatment notes were inconsistent with his finding that Claimant had "extreme limitations" in interacting with others and "marked limitations" in completing tasks and personal care. (*Id.*)  Lastly, the ALJ reasoned Dr. Johri's limitations were inconsistent with educational records. (*Id.*)

Plaintiff asserts that the ALJ erred in his assessment of Dr. Johri's opinion because he "cherry picked" the evidence and failed to consider all the factors relevant to assessing a treating source opinion under 20 C.F.R. § 416.927(c)(2).

To be sure, ALJs are entitled to resolve conflicts in the record, but their discretion is not so wide as to permit them to pick and choose only evidence that supports a particular conclusion.  *See Fiorello v. Heckler,* 725 F.2d 174, 175-176 (2d Cir.1983).  In support of her argument, Plaintiff asserts the ALJ ignored treatment notations indicating Dr. Johri changed Claimant's medication and ignored education notes which indicated Claimant was not completing assignments.  (Dkt. No. 11 at 16 [Pl.'s Mem. of Law].)  However, a review of the decision and record indicates that the ALJ appropriately considered Dr. Johri's medical opinion and explained his reasoning for the weight afforded to the opinion.

First, the ALJ did not ignore treatment notations indicating Dr. Johri changed Claimant's medication.  The ALJ noted medication changes made by Dr. Johri in his discussion of the doctor's treatment notations.  (T. 25.)  The ALJ ultimately concluded that "[a]lthough Dr. Johri has had to alter [Claimant's] prescription, the overall impression of Dr. Johri's treatment notes are inconsistent with Dr. Johri's findings that

[Claimant] has extreme limitations in interacting with others and marked limitations in completing tasks and personal care." (T. 27.) Therefore, contrary to Plaintiff's assertion, the ALJ did not "ignore" Dr. Johri's medication management.

Second, the ALJ did not "ignore" or misrepresent Claimant's educational records. In assessing Dr. Johri's opinion the ALJ concluded that the limitations imposed therein were inconsistent with teacher evaluations indicating that Claimant was capable of controlling his anger. (T. 27.) Plaintiff argues evidence in the record, namely Claimant's trouble completing homework assignments and getting along with his siblings, supported Dr. Johri's opinion and the ALJ erred in ignoring such evidence. (Dkt. No. 11 at 16-17 [Pl.'s Mem. of Law].) However, the ALJ did not "ignore" such evidence. The ALJ clearly outlined in his decision evidence of Claimant's difficulty completing homework and interacting with his siblings. (T. 26.)

Indeed, as indicated by the ALJ, although Plaintiff testified that Claimant showed anger and aggression towards his sisters, educational records and treatment notations indicated that Claimant's behavior was managed with medication and did not present issues at school. At the hearing Plaintiff testified that Claimant could get very aggressive towards his sisters (T. 61); however, Claimant did not get aggressive towards anyone else (T. 66). Claimant's fourth grade teacher, Marsh Colucci, stated that Claimant was "very well behaved when medicated," but when he was not on medication he tended to get into trouble. (T. 257.) Claimant's sixth grade teacher, Renee O'Neill, stated Claimant had "obvious" and "serious" problems in many activates of interacting and relating with others. (T. 308.) However, Ms. O'Neill indicated on her questionnaire that at that time behavior modification strategies had not been

implemented to address concerns in that area. (*Id.*)  Treatment notations indicated that Claimant was, overall, doing well at school and doing well when on medication. (T. 311, 327, 330, 331, 337, 339, 340, 341, 343, 344, 347, 348, 351, 352, 354, 355, 357.)

Plaintiff is essentially arguing that evidence in the record supports her contention. However, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).  Therefore, although Plaintiff cites to evidence which supported her contention that Claimant had behavioral problems, the ALJ ultimately concluded such problems were not as severe as alleged. The ALJ cited substantial evidence in the record to support his determination and therefore the ALJ's assessment of the evidence is upheld.  *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence."); s*ee Veino v. Barnhart,* 312 F.3d 578, 586 (2d Cir. 2002) ("Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for

that of the Commissioner."); *see also Wojciechowski,* 967 F.Supp.2d at 605

(Commissioner's findings must be sustained if supported by substantial evidence even if

substantial evidence supported the plaintiff's position); *see also Jones,* 949 F.2d at 59

(reviewing courts must afford the Commissioner's determination considerable deference

and cannot substitute own judgment even if it might justifiably have reached a different

result upon a *de novo* review).

The ALJ properly assessed Dr. Johri's opinion under 20 C.F.R. § 416.927(c)(2).

In his decision the ALJ thoroughly summarized the doctor's treatment history with

Claimant, clearly indicating the ALJ was aware of his status as a treating source and the

frequency of treatment.  (T. 26.)  The ALJ also summarized other medical opinions,

Plaintiff's testimony, and education records and reports.  (T. 26-27.)

The ALJ provided good reasons for affording less than controlling weight to Dr.

Johri's assessment.  The ALJ ultimately concluded Dr. Johri's limitations were

inconsistent with his treatment notations, the doctor did not complete the narrative

portion of the assessment, treatment notations indicated Claimant had fewer behavioral

problems at school, and educational records indicated Claimant was capable of

controlling his anger.  *See Domm v. Colvin*, 579 F. App'x 27 (2d Cir. 2014) (the ALJ

properly afforded treating source opinion only probative weight, noting that the

restrictive assessment was inconsistent with the source's own treatment notes, the

conclusion of other medical sources, and plaintiff's testimony regarding her daily

functioning); *see Camille v. Colvin*, 652 F. App'x (2d Cir. 2016) (good reasons for

affording treating source opinion limited weight included the opinion conflicted with own

notes and check-box form requested narrative explanation which treating source declined to provide).

Lastly, Plaintiff makes the conclusory argument that Dr. Johri's opinion should have been given more weight than the opinion of one-time consultative examiner Jeanne Shapiro, Ph.D. (Dkt. No. 11 at 18 [Pl.'s Mem. of Law].) It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e). The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims who's "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *see also Monette v. Colvin,* 654 F. App'x 516 (2d Cir. 2016); *see also Snyder v. Colvin,* 667 F. App'x 319 (2d Cir. 2016). Therefore, the ALJ did not commit legal error in affording more weight to a consultative examiner than a treating source.

Overall, the ALJ properly assessed the medical source statement provided by Dr. Johri, the ALJ did not "ignore" or "cherry pick" evidence, and substantial evidence supported the ALJ's determination to afford Dr. Johri's opinion less than controlling weight.

**B. Domain of Attending and Completing Tasks**

The ALJ concluded that Claimant had "less than marked limitation" in the domain of attending and completing tasks. (T. 29.) In this domain, the ALJ considers a child's ability to focus and maintain attention, and to begin, carry through, and finish activities or tasks. SSR 09-4p; *see* 20 C.F.R. § 416.926a(h). The ALJ also considers the child's ability to initiate and maintain attention, including the child's alertness and ability to focus on an activity or task despite distractions, and to perform tasks at an appropriate pace; the child's ability to change focus after completing a task and to avoid impulsive thinking and acting; and a child's ability to organize, plan ahead, prioritize competing tasks, and manage time. *Id.*

The ALJ concluded that although Claimant had difficulties in school due to his inability to focus, the record indicated that his condition improved with medication, he was in regular education classes, and performed at grade level despite difficulties paying attention. (T. 29-30.) The ALJ also noted that Claimant's teacher indicated his academic "shortcomings" were attributed to his failure to complete homework rather than behavioral problems. (T. 30.)

Plaintiff asserts the ALJ failed to acknowledge evidence or explain his rejection of evidence which supported greater limitations in this domain. (Dkt. No. 11 at 19-22 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues the ALJ erred in his determination that Claimant's symptoms improved with medication because the ALJ ignored Dr. Johri's medication changes. (*Id.* at 20.) Plaintiff also alleges that the ALJ "ignored" Ms. O'Neill's reports. (*Id.*) However, as stated herein, the ALJ did not "ignore" evidence in the record. The ALJ acknowledged Dr. Johri's treatment of Claimant included medication changes. The ALJ also thoroughly discussed Ms. O'Neill's report and other

educational records.  Plaintiff asserts that Ms. O'Neill's statement supported a finding of "marked" limitation in this domain because she found "serious" and "obvious" problems in various activities under the domain.  (*Id.*; *St. Louis ex rel. D.H. v. Comm'r of Soc. Sec.*, 28 F.Supp.3d 142, 148 (N.D.N.Y. 2014).)  However, "[w]here a teacher's opinion is inconsistent with the totality of the evidence, it is the ALJ's prerogative to assign that opinion only some or little weight."  *Crouch ex rel. K.C. v. Astrue*, No. 5:11-CV-0820, 2013 WL 316547, at *3 (N.D.N.Y. Jan. 28, 2013).

Plaintiff also asserts that the ALJ failed to reconcile his findings with evidence that supported greater limitations.  (Dkt. No. 11 at 20 [Pl.'s Mem. of Law] citing *Smith ex rel. M.H. v. Astrue*, No. 09-CV-921, 2011 WL 1205132, at *6 (N.D.N.Y. Mar. 8, 2011), *report and recommendation adopted,* No. 5:09-CV-921, 2011 WL 1157390 (N.D.N.Y. Mar. 29, 2011).)  In *Smith*, the record contained a teacher statement indicating the claimant had very serious to obvious problems in the domain of attending and completing tasks and the ALJ erroneously stated that there was no evidence in the record to indicate claimant had a marked limitation in the domain.  *Smith ex rel. M.H.,* 2011 WL 1205132, at *6. Mar. 8, 2011).  Here, unlike in *Smith*, the ALJ acknowledged Ms. O'Neill's assessment.  (T. 27.)  The ALJ afforded her opinion, that Claimant had limitations in attending and completing tasks, "great weight."  (*Id.*)  However, the ALJ reasoned that he afforded the statement "little weight" to the extent that it suggested Claimant had a "marked" limitation.  (*Id.*)  The ALJ reasoned that a finding of a marked limitation was inconsistent with Ms. O'Neill's description of the accommodations provided to Claimant. (*Id.*)  Therefore, the ALJ addressed evidence in the record

supporting greater limitations in this domain and provided ample reasoning for not adopting those limitations.

Overall, although evidence in the record could support greater limitations in the domain of attending and completing tasks, substantial evidence in the record supported the ALJ's determination that Claimant had a less than marked limitation. *See Brault, Comm'r*, 683 F.3d at 448; *see Bonet ex re. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (the question is not whether there is substantial evidence to support the claimant's position, but whether there is substantial evidence to support the ALJ's decision)..

### C. Domain of Interacting and Relating with Others

The ALJ determined that Claimant had a less than marked limitation in the domain of interacting and relating with others. (T. 31.) In this domain, an ALJ must consider a child's ability to initiate and respond to exchanges with other people, and to form and sustain relationships with family members, friends, and others. SSR 09-5p. This domain includes all aspects of social interaction with individuals and groups at home, at school, and in the community. *Id.* Important aspects of both interacting and relating are the child's response to persons in authority, compliance with rules, and regard for the possessions of others. *Id.*

The ALJ concluded that although Claimant continued to have difficulty getting along with his sisters, Claimant's behavior at school improved. (T. 31.) The ALJ acknowledged a discipline report from the school which indicated one suspension. (*Id.*) The ALJ also relied on Ms. O'Neill's statement regarding behavior modification strategies. (*Id.*)

Plaintiff asserts the ALJ "ignored" relevant evidence and erred in failing to explain his rejection of evidence. (Dkt. No. 11 at 22-24 [Pl.'s Mem. Of Law].) Plaintiff relies on the opinion of Dr. Johri to support greater limitations in this domain than found by the ALJ. (*Id.*) However, contrary to Plaintiff's assertion, the ALJ did not ignore Dr. Johri's opinion. The ALJ acknowledged the doctor's opinion and ultimately afforded the opinion little weight. (T. 27.) As discussed already herein, the ALJ properly weighed Dr. Johri's opinion.

Substantial evidence in the record supported the ALJ's determination that Claimant had less than marked limitations in the domain of interacting and relating with others and in making his determination the ALJ did not ignore or cherry pick the evidence. Indeed, as outlined by the ALJ, education records supported his determination. Claimant's report card indicated his effort was "excellent" in following classroom procedures and rule; responding positively to suggestions; respecting the rights, feelings, and property of others; and seeking teacher's help at appropriate times. (T. 248.) The report card indicated Claimant's effort was "satisfactory" in following directions, listening attentively and participating appropriately; completing work on time; and exhibiting self-control. (*Id.*) Ms. O'Neill described Claimant's strengths as "very polite, well-mannered student." (T. 276.) Dr. Johri consistently observed Claimant as calm, cooperative, and pleasant. (T. 337, 397, 398, 399, 400, 401, 402.) Plaintiff testified that Claimant was aggressive towards his sisters, but not with anyone else. (T. 65-66.)

Therefore, contrary to Plaintiff's assertions, the ALJ did not ignore evidence in the record nor did the ALJ fail to provide evidence to support his determination.

Although evidence in the record could support greater limitations in this domain, the ALJ provided substantial evidence in the record to support his determination.

Overall, the ALJ properly assessed the medical opinion evidence and other evidence in the record. There is no indication that the ALJ ignored or cherry picked the evidence in the record. The ALJ's decision was thorough and properly summarized the evidence, including Plaintiff's testimony. The ALJ provided substantial evidence in the record to support his weight determinations and to support his functional equivalency determinations. Therefore, the ALJ's determination is upheld.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is

    **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is

    **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.


Dated:    February 27, 2018                  _Bill Carter_
                                           William B. Mitchell Carter
                                           U.S. Magistrate Judge